**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00662-RM

BIG SKY TRADING, LLC,

      Plaintiff,

v.

ALFALFA'S MARKET, INC.,

      Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS (A) EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER AND (B) MOTION FOR PRELIMINARY
INJUNCTION**

---

**<u>NATURE OF THE CASE</u>**

1.      This is a civil action for monetary and injunctive relief, pursuant to which Big Sky Trading LLC, ("*Plaintiff*") seeks to enforce its rights under the Perishable Agricultural Commodities Act, 1930, *as amended*, 7 U.S.C. §§ 499a-499t ("*PACA*"), including PACA's Trust and Unfair Conduct provisions, against Alfalfa's Market, Inc. ("*Defendant*"), and further seeks to enforce its rights under state law (e.g., breach of contract, etc.).

2.      Plaintiff is the holder of a properly perfected PACA trust claim in the current amount of not less than $76,019.42, plus further interest at the statutory rate of 1.5% per month (18% APR) and contractually due costs of collection, including attorneys' fees, as sums owing in connection with the Plaintiff's unpaid Produce transactions with Defendant.

3.      Further, Defendant has committed willful, repeated, and flagrant violations of Section 2 of PACA (i.e., Unfair Conduct provisions) and, as a direct result of said violations,

4808736.3

Plaintiff has incurred damages of not less than $76,019.42, plus further interest at the statutory rate of 1.5% per month (18% APR) and contractually due costs of collection, including attorneys' fees, as sums owing in connection with the Plaintiff's unpaid transactions for perishable agricultural commodities ("*Produce*") with Defendant.  This memorandum of law is hereby submitted in support of Plaintiff's contemporaneously-filed Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

## I.  <u>INTRODUCTION</u>

4.      Plaintiff has filed this action to recover no less than $76,019.42 in principal, interest, attorney's fees, and costs for Produce sold to Defendant. The claims in Plaintiff's complaint, Docket No. 1, may be summarized as follows: The First Claim for Relief seeks enforcement of the trust imposed on the Defendant's assets under PACA.  The Second Claim for Relief seeks enforcement of PACA's trust provisions based on the Defendant's failure to maintain the trust.  The Third Claim for Relief seeks enforcement of PACA's unfair trade practice provisions based on Defendant's failure to pay Plaintiff.  The Fourth Claim for Relief seeks to enforce the terms of the parties' written agreements.  The Fifth Claim for Relief seeks enforcement of PACA's unfair trade practice provisions based on the Defendant's various breaches of its express or implied duties under PACA. The Sixth Claim for Relief seeks enforcement of PACA's unfair trade practice provisions based on the Defendant's breaches of the duties of good faith and fair dealing, which it owed to Plaintiff.

5.      In essence, Plaintiff alleges that the Defendant has dissipated, and is continuing to dissipate, the assets impressed with the statutory PACA trust, thereby harming the rights of all of the Defendant's PACA trust beneficiaries, including the Plaintiff.

6.     The Defendant's present and continuing dissipation of the Plaintiff's trust assets is wrongful and in violation of the Plaintiff's PACA trust rights.  PACA requires a Produce debtor in the Defendant's position to maintain sufficient assets at all times to satisfy the claims of all the PACA trust beneficiaries, such as the Plaintiff.  Accordingly, Plaintiff seeks injunctive relief to prevent the Defendant from further dissipating the PACA trust.  If the Defendant is not enjoined from dissipating the PACA trust, the trust assets will be forever lost and the Plaintiff will thereby suffer the exact irreparable harm this remedial statute (PACA) was designed to prevent.

## II. <u>STATEMENT OF THE FACTS</u>

7.     The Plaintiff is a PACA licensee and buyer and seller of wholesale quantities of Produce.  *See Declaration of Plaintiff in Support of Injunctive Relief and PACA Trust Claim of Big Sky Trading LLC ("Reid Decl.")*, attached hereto, at ¶¶ 5-6.[1]  The Defendant is also a buyer and seller of wholesale or jobbing quantities of Produce in interstate commerce, and is therefore a dealer of Produce under PACA.  *Id*. at ¶¶ 11, 16.  In fact, because Defendant purchased and received Produce from Plaintiff which included, *inter alia*, 67 cases of various Produce items that totaled not less than 2,029 pounds, the Produce transaction between Defendant and Plaintiff involved a ton-lot shipment of Produce, as that shipment weighed in excess of 2,000 pounds. *Id*. at ¶ 15.  Plaintiff's Produce originated from, *inter alia*, foreign locations in Mexico and domestic locations inside and outside the State of Colorado, all of which was delivered to Defendant's three grocery store locations in Colorado.  As such, the Produce transactions between Plaintiff and Defendant involved interstate or foreign commerce.  *Id*. at ¶ 17.  Further, Defendant is engaged in the business of making sales directly to consumers via a retail location, and is, therefore, a

---

[1] All exhibits referenced herein are exhibits to the Reid Declaration.

"retailer" under PACA.  *Id*. at ¶ 12.  As a retailer, Defendant purchased and received Produce from Plaintiff, annually, with an invoice value in excess of $230,000.  *Id*. at ¶ 16.  As such, Defendant's retail operations qualify Defendant as a dealer under PACA.

8.    Plaintiff and Defendant entered into multiple agreements wherein Plaintiff agreed to sell Produce to Defendant and Defendant agreed to purchase, receive, and accept Produce from Plaintiff.  *Id*. at ¶ 13.  Pursuant to the Agreement, Plaintiff delivered Produce to the Defendant, and the Defendant accepted a shipment of Produce from the Plaintiff.  *Id*. at ¶¶ 18-19.  Defendant presently owes the Plaintiff in excess of $76,019.42, plus additional interest, attorney's fees, and costs, which continue to accrue for the Produce.  *Id*. at ¶ 14.  Per the USDA regulations, the Plaintiff is the holder of a properly perfected PACA trust claim for this entire sum.  *See id*. at ¶¶ 18-32.

9.    Despite repeated demands, the Defendant has not paid the Plaintiff the balance due on its PACA trust claims, and the debt remains due and owing.  *See id*. at ¶¶ 28-32.  Based on the Defendant's refusal and admitted inability to pay its bills, the Defendant will not and cannot satisfy the balances owed to the Plaintiff and other similarly-situated PACA trust beneficiaries if they are allowed to continue dissipating the PACA trust.  *Id*. at ¶¶ 33-47.

10.    Rather than distributing the PACA trust assets for the payment of the claims of PACA trust beneficiaries, such as Plaintiff, the Defendant has instead been, either voluntarily or against its will, diverting these PACA trust assets to other uses in clear violation of its duties as a statutory trustee under PACA.  *Id*. at ¶¶ 33-47.

### III.   SUMMARY OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT

11.    Enacted in 1930, PACA was designed "to encourage fair trading practices in the marketing of perishable commodities."  *Frio Ice, S.A. v. Sunfruit, Inc*., 918 F.2d 154, 156 (11th

Cir. 1990) (citing H.R. Rep. No. 543, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S. Code Cong. & Admin. News, 405, 406).  PACA was also meant to "promote financial responsibility in the interstate commerce of shipping and handling of perishable agricultural commodities."  *Bama Tomato Co. v. U.S. Dep't of Agric.*, 112 F.3d 1542, 1545 (11th Cir. 1997).  It is admittedly a "tough law," which was enacted primarily "to protect the producers of perishable agricultural products, most of whom must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing."  *Goldman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (internal citations omitted).

12.     PACA was amended after Congress recognized a significant and growing payment problem in the early 1980's.  *See* H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S. Code Cong & Admin News 405, 406; *See also Frio Ice, S.A.,* 918 F.2d at 156.  The USDA estimated that an additional ten percent (10%) was added to the consumer's purchase price of fruits and vegetables to make up the losses due to nonpayment for produce.  1984 U.S. Code Cong & Admin New at 412.  Congress intended for PACA to remedy this "abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables."  49 Fed. Reg. 45735, *45737, 1984 WL 134664 (USDA Nov. 20, 1984).  Congress therefore amended PACA in 1984 by adding Section 5(c), 7 U.S.C. § 499e(c), "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them."  1984 U.S. Code Cong & Admin News at 406.

13.     PACA's primary protection mechanism is its trust provision, which "creates a statutory trust for unpaid sellers [or suppliers] of perishable agricultural commodities and provides that all such commodities, as well as accounts receivable from the sale of such commodities, 'shall

be held by . . . [the] broker [or dealer] in trust for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment . . . has been received." *Gargiulo v. G. M. Sales*, 131 F.3d 995, 999 (11th Cir. 1997) (*quoting* 7 U.S.C. § 499e(c)(2)).  This provision "creates a 'non-segregated floating trust,' which gives produce suppliers priority over . . . creditors who may have perfected security interests in the inventory and receivables of an insolvent produce dealer." *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (citing 7. C.F.R. § 46.46).

14.     The PACA "trustee" is the Defendant that receives the Produce and is charged with maintaining sufficient PACA trust assets to pay its PACA trust beneficiaries as their invoices become due. *See C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311 (11th Cir. 1992) (using trust principles to discuss the duties of the Produce supplier).  The trustee of the PACA trust is obligated to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers [and suppliers] of perishable agricultural commodities.  Any act or omission which is inconsistent with this responsibility, including dissipation of the trust assets, is unlawful and in violation of [PACA]."  7 C.F.R. § 46.46(d)(1).  PACA regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."  7 C.F.R. § 46.46(a)(2).

15.     The PACA trust commences by operation of law upon receipt of the Produce and continues until full payment for the Produce has been made.  7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(d)(1).  Once the supplier delivers the Produce, failure of the buyer (as trustee) to maintain trust assets sufficient to make full payment promptly to the trust beneficiaries is unlawful.  7 U.S.C.

§ 499b(4); *see Frio Ice*, *S.A.*, 918 F.2d at 159; *see also Red's Mkt. v. Cape Canaveral Cruise Line*, 181 F.Supp.2d 1339, 1344 (M.D. Fla. 2002) (using the trust assets for any purpose other than paying the Produce supplier, including the payment of legitimate business expenses, is a violation under PACA); *accord In Re: Guarracino*, 575 B.R. 298, 313 (Bankr. D. N. J. 2017); *In re Bartlett*, 397 B.R. 610, 620 (Bank. D. Mass. 2008) (quoting *Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 8-9 (1st Cir. 1999)).  A breach of fiduciary duty, for example, exists when the proceeds from the sale of perishable agricultural products are used for even "legitimate business expenditures, such as the payment of rent, payroll, or utilities."  *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *see also Hiller Cranberry Prods.*, 165 F.3d at 8-9 (ruling that use of PACA trust assets for purposes other than payment of PACA creditors, without keeping an adequate reserve for payment, constitutes an unlawful dissipation of trust assets); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997); *In re Baird*, 114 B.R. 198, 204 (9th Cir. 1990); *Red's Mkt.*, 181 F.Supp.2d at 1344; *In re Al Nagelberg & Co.*, 84 B.R. 19 (S.D.N.Y. 1988); *In re Zois*, 201 B.R. 501 (Bankr. N.D. Ill. 1996).

16.     The principal benefit of the trust for a Produce supplier is that when a buyer or consignee fails to pay or becomes insolvent, the supplier is placed first in line among creditors to receive the trust *res,* which consists of all assets of the debtor unless and until the debtor proves a particular asset was acquired with something other than the proceeds of the debtor's dealings in Produce.  *Frio Ice, S.A*, 918 F.2d at 156; s*ee also In re Monterey House*, 71 B.R. 244, 249 (Bankr. S.D. Tex. 1986).  The PACA trust *res* serves as a fund from which unpaid Produce suppliers can be assured payment.  By operation of trust law, while a buyer or consignee of Produce has legal title to the PACA trust *res*, **equitable** title remains with the supplier of the Produce. *See In re*

*Kornblum & Co,* 81 F.3d 280, 284 (2d Cir. 1996); *In re Delta Produce, LP*, 521 B.R. 576, 584 (Bankr. W.D. Tex. 2014).

17.     The establishment of the PACA trust occurs upon the commencement of the receiver's acquiring and selling of Produce and exists continuously throughout the life of the receiver's business until the PACA suppliers are paid in full.  *See Frio Ice*, *S.A.,* 918 F.2d at 156. Any assets purchased while the trust is in existence will be assumed to be purchased with trust assets and will, therefore, become part of the trust fund assets available to satisfy the claims of the qualified unpaid PACA suppliers.  *See In re Kornblum & Co*., 81 F.3d at 287; *Chiquita Fresh N. Am., LLC v. Fierman Produce Exch. Inc.*, 198 F.Supp.3d 171, 176 (E.D. N.Y. 2016); *In re Bear Kodiak Produce, Inc.*, 283 B.R. 577, 582 (Bankr. D. Ariz. 2002); *In re Atlantic Tropical Mkt.*, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990).  When PACA trust assets are commingled with funds not subject to the trust, the trust is impressed upon the entire commingled fund for the benefit of the PACA trust beneficiaries.  *In re Gotham Provision*, 669 F.2d 1000 (5th Cir. 1982).

18.     With respect to any issue of tracing assets, the *Atlantic Tropical Market* court considered this legislative history when it placed **on the buyer or consignee** the burden to "track the status of the trust fund and to provide evidence of other origin of purchases of assets." 118 B.R. at 142 (*citing In re Al Nagelberg & Co.*, 84 B.R. 19, 21 (S.D.N.Y. 1988)); *See also Six L's Packing v. W. Des Moines State Bank*, 967 F.2d 256, 258 (8th Cir. 1992); *In re N. Merberg & Sons*, 166 B.R. 567, 570 (Bankr. S.D.N.Y. 1994); *In re Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985) ("Should a dispute arise, it will be the buyers' burden to establish which, if any, assets are not subject to the PACA trust").  The Produce buyer or consignee is required to maintain PACA trust assets so that such assets are freely available to satisfy all outstanding

obligations to Produce suppliers.  7 C.F.R. § 46.46(e).  This obligation is plainly set forth in the

PACA statute.  7 U.S.C. § 499(b)(4).

19.     In *Sanzone-Palmisano Co. v. Seaman Enterprises*, 986 F.2d 1010, 1014 (6th Cir.

1993), the Sixth Circuit provided a detailed discussion of tracing and the policy reasons for placing

the burden on the debtor, recognizing:

> that in most cases it will be virtually impossible for a PACA debtor to trace the
> origin of the disputed assets . . . [However, w]e believe that **this is the outcome
> that Congress intended**.

 (emphasis added).  After finding that the supplier had established the validity of its PACA trust

interest, the Court stated that, upon remand to the district court, the burden was on the debtor to:

> prove which seized assets were not purchased with funds from the sale of produce.
> **All of the seized assets that cannot be traced to a non-trust source are part of
> the trust res and are subject to [supplier's] trust claim.**

*Id*. (emphasis added).

20.     Generally, PACA creditors first look to the PACA licensee for payment from the

trust assets, but if the Defendant's assets are insufficient to satisfy the liability, they turn to others

who are secondarily liable as fiduciaries of the trust assets.  *Bocchi Ams. Assocs. Inc. v. Commerce

Fresh Mktg. Inc*., 515 F.3d 383, 388 (5th Cir. 2008); *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868

F. Supp. 703, 706 (E.D. Pa. 1994).  Such secondary liability does not arise from a "piercing the

corporate veil" theory, but rather from the fiduciary obligations of those maintaining control over

the PACA trust assets.  *See Bear Mountain Orchards, Inc. v. Mich-Kim, Inc*., 623 F.3d 163, 167-

168 (3d Cir. 2010); *Shepard*, 868 F. Supp. at 705; *Morris Okun, Inc.,* 814 F. Supp. at 348.

21.     The owners, shareholders, and directors of a Produce buyer or consignee are

considered fiduciaries of the PACA trust and are therefore individually liable for a failure to

maintain the trust.  *See Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705-07 (2d. Cir. 2007); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 420-421 (3rd Cir. 2005); *Morris Okun, Inc.* 814 F. Supp. at 348.  The bases for this holding are the common law trust principles that fiduciary duties are not carried out by a business or corporation but by the individuals who are responsible for the operation of the corporation, and the principle that a trustee is under a duty to the beneficiary to exercise such care and skill as a person of ordinary prudence would in dealing with his own property.  *Golman-Hayden Co., Inc.*, 217 F.3d at 351; *see generally* Restatement 2d of Trusts § 174 (2015).

## IV.  JURISDICTION

22.     Injunctive relief is necessary and proper under PACA to prevent the dissipation of a supplier's interest in PACA trust assets, and the District Courts have jurisdiction to entertain injunctive actions by both the USDA and private unpaid Produce suppliers with PACA trust rights. *Frio Ice, S.A.*, 918 F.2d at 158-60; *see also Debruyn Produce  v. Olympia Produce*, 734 F. Supp. 483 (N.D. Ga. 1989) ("Injunctive relief is necessary to preserve the status quo for the protection of the produce [suppliers]"); *J.R. Brooks & Sons v. Norman's Country Mkt.*, 98 B.R. 47 (Bankr. N.D. Fla. 1989) (same); 7 U.S.C. § 499e(c)(4).

23.     Preventing dissipation of the trust is a key purpose of PACA.  *Frio Ice, S.A.*, 918 F.2d at 159.  Preventing the transfer of PACA trust assets often may be the only means by which a Federal Court can prevent dissipation of the PACA trust.  *Id.*  Upon a showing that the PACA trust is being dissipated or threatened with dissipation, a District Court should require the maintenance of PACA trust assets.  *See Frio Ice*, 918 F.2d at 159; *see also Taylor Farms Fla. V. Gennaro's Produce*,  No. 07-60259-CIV, 2007 WL 646987, at *2 (S.D. Fla. Feb. 27, 2007)

(finding that no-notice injunctive relief granted to the PACA trust beneficiary to stop the Defendant' continued dissipation of the trust *res* and to maintain the status quo).

## V. <u>ARGUMENT</u>

24.     Federal Rule of Civil Procedure 65(a) & (b) provide for the entry of a preliminary injunction and temporary restraining order.  Injunctive relief is particularly appropriate in cases like this, where the *res* of the PACA trust is in the process of being dissipated or is threatened with dissipation.  In *Frio Ice, S.A.*, 918 F.2d at 158-60, the Eleventh Circuit reversed a trial court's decision refusing to enter a preliminary injunction in a PACA collection case similar to the present case.  In that case, the Eleventh Circuit held that district courts have jurisdiction to enter preliminary injunctive relief in PACA litigation matters, writing:

> Upon a showing that the [PACA] trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets.  It should then require the PACA debtor to separate and maintain these produce-related assets as the PACA trust for the benefit of all unpaid sellers [or suppliers] having a bona fide claim.  7 U.S.C. § 499e(c)(3).  Each beneficiary would then be entitled to its pro rata share.

*Frio Ice, S.A.*, 918 F.2d at 158-59.  By its motion for a temporary restraining order and motion for a preliminary injunction, the Plaintiff seeks similar relief.

25.     The Defendant's dissipation of the Plaintiff's PACA trust funds is an immediate and irreparable injury which courts in this Circuit and others have consistently held as a valid basis for the entry of an immediate injunction restraining further dissipation of trust assets when the produce supplier is not paid.  *See Frio Ice,* 918 F. 2d at 159; *accord Dole Fresh Fruit v. United Banana*, 821 F.2d 106 (2nd Cir. 1987); *Taylor Farms Fla. v. Gennaro's Produce*, 2007 WL

646987, at *2 (S.D. Fla. Feb. 27, 2007) (holding that the Plaintiff "will suffer immediate irreparable injury in the form of a loss of trust assets unless this Order is granted without notice.").

26.    In deciding whether to issue a preliminary injunction, a court must consider four factors:

> (1) A substantial likelihood that it will succeed on the merits; (2) that it will suffer irreparable harm unless the injunction issues; (3) that the potential injury outweighs possible harm to the opposing party; and (4) that the injunction would not be adverse to the public interest.

*Frio Ice, S.A.*, 918 F.2d at 159.  Here, all the elements for the entry of a preliminary injunction have been met.  As discussed below, the Plaintiff has demonstrated, through the attached Reid Declaration , that it is likely to succeed on the merits, that it will suffer irreparable harm unless the preliminary injunction issues, that that potential injury outweighs potential harm to the Defendant, and that the preliminary injunction is not adverse to the public interest.

### 1.    LIKELIHOOD OF SUCCESS ON THE MERITS

27.    The declaration of Jeff Reid, owner of Big Sky Trading LLC, demonstrates that the Plaintiff is the holder of a properly perfected PACA trust claim because Plaintiff preserved its PACA trust rights by including the requisite PACA trust language on its invoice to the Defendant. *See Reid Decl*. at ¶ 22; 7 U.S.C. § 499e(c)(4).  It is undisputed that the Defendant received and accepted all of the Produce at issue because the Defendant's accepted the shipments of Produce at its various Colorado based retail locations in Boulder, Longmont, and Louisville and signed each of Plaintiff's unpaid invoices during the receiving and acceptance process.  *See Reid Decl.* at ¶¶ 10, 17-19.  It is also undisputed that the Defendant never rejected the Produce during the subject time period of this PACA collection action. *Id.* Plaintiff's Declaration explains in detail the Defendant's failure to pay for the invoices, and its efforts to secure satisfactory payments from the

Defendant.  *Id.* at ¶¶ 33-44.  As a case based almost exclusively on written documents that have been properly authenticated (an "account stated" action), and because the Defendant has no defenses to these payment claims under PACA, the Plaintiff will almost certainly prevail at any hearing on the merits of its claims.

### 2.   IRREPARABLE INJURY

28.    In cases interpreting the rights of PACA creditors, courts in several jurisdictions have recognized that without injunctive relief, a PACA supplier faced with a financially unstable or insolvent buyer will not receive either the PACA trust assets *or* the proceeds of such trust assets. *Tanimura & Antle, Inc. v. Packed Fresh Produce*, 222 F.3d 132, 140 (3rd Cir. 2009) ("PACA trust dissipation . . . constitutes irreparable harm."); *Frio Ice, S.A.*, 918 F.2d at 159 ("**The legislative history [of the PACA] noted that once the trust is dissipated it is almost impossible for the beneficiary to obtain recovery.**" (emphasis added)).

29.    A moving party must show either actual dissipation or the threat of dissipation of the PACA trust in order to obtain injunctive relief and a segregation of the trust proceeds.  *Frio Ice, S.A.*, 918 F.2d at 159.  In this instance, the Defendant either lacks the ability to pay for the Produce it purchased from the Plaintiff or is willfully choosing to dissipate the trust funds instead of paying its Produce suppliers such a Plaintiff.  *See Reid Decl.* at ¶¶ 33-44.  Furthermore, the Defendant is admittedly experiencing financial distress and is incapable of satisfying the debts owed to the trust's beneficiaries, such as the Plaintiff.  *Id.*   The Defendant's inability to pay for the Produce it purchased on credit establishes either actual dissipation of the funds the Defendant is supposed to be holding in trust for the payment of its produce-related debts (i.e., the proceeds from resale of the Produce, among other things) or a clear threat of dissipation of the PACA trust

assets unless the Defendant are enjoined from further violating PACA.  *Id.*  Further, the Defendant is admittedly closing at least one of its retail locations and is actively liquidating its inventory and other assets at its Boulder, Colorado location.  *See Reid Decl.* at ¶¶ 39-40.  Because this is occurring while Plaintiff's Produce related transactions remain unpaid, the Defendant is engaged in actual dissipation of PACA trust assets.

30.     Injunctive relief will force the Defendant to cease dissipation of the PACA trust, prevent third-party purchasers from terminating or "cutting off" the Plaintiff's PACA trust rights, and require the Defendant to return the PACA trust to a fully-funded level sufficient to satisfy the claims of qualified PACA trust beneficiaries in full.  To date, the Defendant has dissipated the trust by failing to pay Plaintiff, and the Defendant has demonstrated and admitted its inability to do so. The Defendant's clear refusal or admitted inability to pay the Plaintiff despite failing to notify Plaintiff of any defects or Problems with the Produce, and their concurrent failure to make the PACA trust assets readily available to make a full payment promptly to the Plaintiff as required by PACA, demonstrates a severe threat that the assets that are to be held in the PACA trust are insufficient and are being dissipated.  Because Congress specifically recognized the virtual impossibility of recovering PACA trust assets once they have been dissipated or transferred to third parties who may have the status of bona fide purchasers, the loss to the Plaintiff and other PACA trust creditors is irreparable.

**3.     BALANCING OF HARM**

31.     The Defendant simply cannot be harmed by the issuance of an injunction because the relief Plaintiff seeks is merely to force the Defendant to comply with the law.  It will also require the Defendant to satisfy their pre-existing obligations under PACA, that is, to preserve the

PACA trust assets for the benefit of PACA trust beneficiaries and make "full payment promptly" on all Produce-related invoices.  On the other hand, the risk of harm to the Plaintiff and others similarly situated is great if the Defendant is allowed to further dissipate trust assets and disburse the PACA trust assets to non-trust creditors.  In his Declaration, Jeff Reid testified that, in his 20 years of experience in the Produce industry,, when produce companies fall into the kinds of financial problems the Defendant is presently experiencing, it inevitably leads to the liquidation of the entity, and that the dissipation of the entity's PACA trust assets will "undoubtedly continue until any hope of recovery is lost, thereby rendering the trust protection under the PACA a meaningless formality." *Reid Decl.* at ¶ 47.  Judicial oversight is thus necessary to protect the trust rights of the Plaintiff and other PACA trust beneficiaries. Far from harming the Defendant, the entry of a preliminary injunction will merely ensure the Defendant does not continue to violate the law.

### 4.     PUBLIC INTEREST

#### A.     <u>Produce Grower/Supplier Protection</u>

32.     The strong preference for the plight of PACA trust creditors that Congress expressed in the 1984 trust amendments to the PACA clearly illustrates the public interest at stake in this case.  In the text of the statute itself, Congress made this point very clear: "This subsection [the new PACA trust provision] is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest."  7 U.S.C. § 499e(c)(1).  The PACA trust safeguards were established to assure payment to Produce growers and shippers.  There can scarcely be a more vital public concern than the economic security and viability of this nation's food supply.

33.     This supply and distribution chain consists of the very same growers, producers, and distributors that Congress sought to protect when it enacted PACA in 1930 and amended it in 1984 to include the PACA trust provisions.  To deny the Plaintiff the requested relief would erode the protection Congress guaranteed to the growers and suppliers of Produce in the Plaintiff's position, bypassing PACA and the regulations promulgated thereunder.  Issuance of a preliminary injunction is in the public interest "as the statutory purpose explicitly encapsulates injunctive relief."  *Tanimura*, 222 F.3d at 140.

**B.     Financial Stability Required by Law**

34.     Congress expressly recognized that PACA

> **. . . is admittedly and intentionally a 'tough law.'**  It was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous.  The law was designed primarily for the protection of the producers of perishable agricultural products-- most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing . . . .

S. Rep. No. 84-2507, at 3 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3699, 3701 (emphasis added); *accord Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692 F.3d 960, 964 (9th Cir. 2012); *Harry Klein Produce Corp. v. U.S. Dep't of Agric.*, 831 F.2d 403, 405 (2d Cir. 1987) (noting that PACA is an "intentionally rigorous law"); *Ruby Robinson Co., Inc. v. Herr*, 453 F. App'x 463, 465 (5th Cir. 2011); *Finer Foods Sales Co., Inc. v. Block*, 708 F.2d 774, 781 (D. D.C. 1983) ("As Congress noted in amending the Act in 1956, '[PACA] is admittedly and intentionally a "tough" law.'"); *see also Hawkins v. Agric. Mktg. Serv., Dept' of Agric., U.S.*, 10 F.3d 1125, 1131 (5th Cir. 1993) ("[A]ny investor in a perishable commodities corporation should know at the beginning of

his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through the PACA.").

35.     PACA recognizes the "need to have **financially responsible** persons as licensees or employees of licensees" involved in the produce industry. *Marvin Tragash Co., Inc. v. U.S. Dep't of Agric.*, 524 F.2d 1255, 1257 (5th Cir. 1975) (emphasis added); *accord Zwick v. Freeman*, 373 F.2d 110, 117 (2d Cir. 1967); *see also Harry Klein Produce Corp.*, 831 F.2d at 405 ("The PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility."); *Finer Foods Sales Co., Inc.*, 708 F.2d at 782 (defining PACA's goal as "that only financially responsible persons should be engaged in the businesses subject to the Act"); *Chidsey v. Geurin*, 443 F.2d 584, 588-89 (6th Cir. 1971) ("[T]he Act was generally intended to keep financially unsound persons from maintaining a license.").

36.     Section 2 of PACA requires that licensees abide by certain requirements, including full and prompt payment. *Finer Foods Sales Co., Inc.*, 708 F.2d at 776 (citing 7 U.S.C. § 499b(4)). "A buyer's failure to tender prompt payment triggers civil liability . . . . The PACA is 'admittedly and intentionally a "tough" law.'" *Baiardi Food Chain v. United States*, 482 F.3d 238, 241 (3d Cir. 2007) (citation omitted); *see also id.* at 242 (noting that Section 2 "imposes several strict requirements on regulated buyers and sellers"). Decisions under PACA repeatedly hold that "all excuses are routinely rejected in determining whether payment violations occurred . . . since '**the Act calls for payment-not excuses**.'" *Finer Foods Sales Co., Inc.*, 708 F.2d at 781 (emphasis added). PACA's "strict policy" in this regard ensures that "a licensee is required to conduct his business in a manner that insures that he pays his bills fully and promptly. If he fails to do so, he violates the Act." *Id.* at 782.

- 17 -

37.     The reason for PACA's strict adherence standards is because

[f]ailure to pay violations not only adversely affect the party who is not paid for the produce, but **such violations have a tendency to snowball**. 'On occasions, one licensee fails to pay another licensee who is then unable to pay a third licensee.' **This could have serious repercussions to producers, licensees and consumers**.

*Finer Foods Sales Co., Inc.*, 708 F.2d at 782 (citation omitted) (emphasis added).  PACA debtors, such as the Defendant, "who suffer a financial loss or otherwise become in a precarious financial position continue to operate for many months and even increase their business substantially, without obtaining new capital, thereby subjecting many persons who [supply] produce to them to the risk of financial loss." *In re: The Caito Produce Co.*, 48 Agric. Dec. 602, 622 (U.S.D.A. 1989). Accordingly, licensees who "extend credit to its purchasers in this regulated industry . . . must be adequately capitalized to be able to sustain any losses that result.  If losses occur which jeopardize a licensee's ability to meet its obligations, it must immediately obtain more capital, or suffer the consequences if violations occur." *Id.* at 620.

38.     "While admittedly the result Congress desired could be harsh in some cases, we cannot say that [PACA] is not reasonably designed to achieve the desired Congressional purpose." *Kleiman & Hochberg, Inc. v. U.S. Dep't of Agric.*, 497 F.3d 681, 690 (D. D.C. 2007) (citation omitted).   "Occasional hardship to the individual is a consideration outweighed by the public interest and the declared policy of Congress."  *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468 (1936).

39.     PACA is such a strong piece of legislation that even bankrupt individuals are not exempt from its requirements.  *See Marvin Tragash Co., Inc.*, 524 F.2d at 1257.  This exemption likewise applies to the Packers and Stockyards Act, 1921, *as amended*, 7 U.S.C. §§ 181-229 ("*PASA*").  *See* 11 U.S.C. § 525(a).

> Under the Packers and Stockyards Act, . . . [t]he licenses of market agencies and dealers may be suspended if they become insolvent.  Packers may be ordered to cease and desist from failing to pay for livestock and packers who become insolvent may be ordered to cease and desist from operation except under such conditions as the Secretary may impose.

*In re: The Caito Produce Co.*, 48 Agric. Dec. at 621 (citing Proceedings and Debates of the 95th Cong., 1st Sess., Vol. 19, pp. H 117610H 11762 (Oct. 28, 1977)).  Thus, the PASA provides that an insolvent licensee may be enjoined from operating.  *See, e.g.*, 7 U.S.C. § 228a (person operating while insolvent may be enjoined from operating).  In enacting PACA, Congress expressly modeled PACA's provisions on the PASA.  *See In re Asinelli, Inc.*, 93 B.R. 433, 435 n.3 (M.D. N.C. 1988) ("The Court notes that the PACA trust provisions were expressly modeled on similar trust provisions amended to the Packers and Stockyards Act, and that decisions interpreting the PSA guide the present interpretation of the PACA."); *In re CFP Liquidating Estate*, 405 B.R. 694, 697 n.3 (D. Del. 2009) ("[T]he provisions of PACA are sufficiently similar [to the PASA] such that, as Congress dictated, case law interpreting one act is instructive when interpreting the other."); *In re Marvin Props., Inc.*, 76 B.R. 150, 152 (9th Cir. B.A.P. 1987) ("In enacting PACA, Congress intended for courts to look at caselaw developed under a similar law passed in the Packers and Stockyards Act . . . for guidance.").  Courts interpreting PACA indicate that **insolvency is where a person's liabilities exceed his assets**.  *See, e.g.*, *Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*, 188 F. Supp. 3d 1097, 1118 (D. N.M. 2016) (emphasis added).

40.     As under the PASA, a financially irresponsible PACA licensee should be enjoined from continuing to operate.  Given PACA's admittedly tough standards, requiring payment without excuse and ensuring that only the financially sound remain licensees, and given the detrimental ramifications in the produce industry where a licensee does not meet these high

standards, a buyer of perishable agricultural commodities, such as the Defendant in this case, which continues to operate in violation of PACA creates substantial financial risk for all of its PACA creditors/unpaid suppliers of Produce, including Plaintiff.

41.     In this case, the Defendant's failure to pay promptly squarely violates PACA.  It further illuminates breaches of the Defendant's respective duties under PACA, including that Defendant would ensure that the Defendant's assets are freely available to satisfy the claims of its PACA creditors.  These failures demonstrate the Defendant's unsound financial practices which are clearly contrary to the intent and purposes of PACA, and injunctive relief is warranted.

## VI.  CONCLUSION

42.     For the foregoing reasons, the Plaintiff respectfully requests this Court enter a temporary restraining order and preliminary injunction that (1) enjoins the Defendant's continued dissipation of the PACA Trust Assets and (2) directs the Defendant, their agents, employees, successors, banking institutions, attorneys, and all persons in active concert and participation with the Defendant to immediately turn over to the registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as the Plaintiff.

Dated: March 5, 2021                    Respectfully submitted,


                                        *s/ Kyler K. Burgi*
                                        Kyler K. Burgi
                                        Michael S. Richardson
                                        DAVIS GRAHAM & STUBBS LLP
                                        1550 17th Street, Suite 500
                                        Denver, Colorado, 80202
                                        Telephone:  303.892.9400
                                        Facsimile: 303.893.1379
                                        Email: kyler.burgi@dgslaw.com
                                                mike.richardson@dgslaw.com

                                        AND

                                        Jason R. Klinowski
                                        KLINOWSKI DAMIANO LLP
                                        P.O. Box 43404
                                        Birmingham, Alabama 35243
                                        Telephone: 205.644.8881
                                        Facsimile: 205.644.8489
                                        Email: jklinowski@aglawyer.com

                                        *Attorneys for Plaintiff Big Sky Trading LLC*